ESTATE OF HARRY L. BROWN, THOMAS GRAINGER, ADMINISTRATOR, W.W.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Brown v. Commissioner
Docket No. 2124-73.
United States Tax Court
T.C. Memo 1974-201; 1974 Tax Ct. Memo LEXIS 120; 33 T.C.M. (CCH) 873; T.C.M. (RIA) 74201; July 31, 1974, Filed. *120 Kenneth R. Hughes, for the petitioner. Rudolf L. Jansen, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $26,581.02 in petitioner's Federal income tax for the period December 29, 1966 through March 31, 1967. The sole issue for decision is whether the petitioner realized dividend income through the payment of its debt by a corporation of which petitioner was the principal shareholder. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Harry L. Brown (hereinafter referred to as the decedent), who resided in Loveland, Ohio, died on December 29, 1966. On January 12, 1967, decedent's brother Karl S. Brown (hereinafter Karl) was appointed executor of decedent's estate. In that capacity, Karl filed a U.S. Fiduciary Income Tax Return for the period beginning December 29, 1966, and ending March 31, 1967, with the district director of internal revenue, Cincinnati, Ohio. On June 23, 1971, Karl resigned as executor of decedent's estate and was replaced by Thomas Grainger, who was appointed as administrator w.w.a. on June 23, 1971. Until his death, decedent was *121 the president of and owned 800 of the 802 outstanding shares of stock of Loveland Gas and Electric Co. (hereinafter the Company). The retained earnings of the Company as of March 31, 1967, and March 31, 1968, were $455,053.42 and $468,393.22, respectively. On July 15, 1954, upon application of the Company, The Canada Life Assurance Co. (hereinafter the Insurer) issued to the Company, as owner and beneficiary, a life insurance policy on the life of the decedent in the amount of $50,000. Until the date of decedent's death, the Company thereafter made all premium payments on the policy and recorded the policy on its books and records as an asset of the corporation to the extent of the current cash surrender value. On July 11, 1963, the decedent obtained a personal loan in the amount of $50,000 from the Provident Savings Bank and Trust Company (hereinafter the Bank). As part of the collateral security for such loan, the Company assigned to the Bank the above-mentioned life insurance policy (hereinafter the policy). Following decedent's death, the Company, as owner and beneficiary of the policy, and the Bank, as assignee of the policy, submitted a proof of claim to the Insurer. *122 On February 22, 1967, the Insurer drew a check in the amount of $55,844.25, representing the face amount of the policy plus accumulated interest, to the order of "The Loveland Gas and Electric Co. and the Provident Bank, Assignee." The Bank refused to endorse such check unless the proceeds of the check were applied to pay the outstanding balance of the decedent's loan of July 11, 1963, and his other outstanding loan indebtedness to the Bank. All the proceeds of the check were so applied on March 10, 1967. At the date of decedent's death, the cash surrender value of the policy, as recorded on the books and records of the Company, was $26,170.78. On March 31, 1967, the Company debited in the amount of $55,844.25 an account on its books and records entitled "Accounts Receivable - Estate of Harry L. Brown," credited an account entitled "Cash Surrender Value - Officers Life Insurance" in the amount of $26,170.78, and also credited its retained earnings account in the amount of $29,673.47. The Company made these entries in its books and records in order to record the transaction whereby the proceeds of the policy were applied to pay the decedent's outstanding indebtedness to the Bank. *123 In a statement of Current Account of Executor filed by Karl, as executor of decedent's estate, on September 20, 1968, with the Probate Court, Clermont County, Ohio, the amount of $55,844.25 was recorded as a receipt by the estate on March 10, 1967 and characterized as "Loveland Gas & Electric - Loan." On June 23, 1971, 266-2/3 shares of stock of the Company were distributed from decedent's estate to his widow. On that same date, she transferred to the Company 178-2/3 of such shares in consideration of the Company's promise to pay her $175 per week for a period of ten years and sold 88 of such shares to Karl for $50,000. Also on June 23, 1971, decedent's estate transferred to the Company 533-1/3 shares of Company stock in consideration of the Company's payment of $200,000 to the estate and the cancellation of $200,000 of the estate's then outstanding indebtedness to the Company, which included the indebtedness of $55,844.25 which had been recorded on the Company's books on March 31, 1967. The books of the Company record that for a period of several years prior to his death, the decedent had from time to time received advances of funds from the Company and made repayments *124 thereof, many of the advances and repayments being in substantial amounts. ULTIMATE FINDING OF FACT A bona fide indebtedness of the petitioner to the Company was created at the time the insurance proceeds were used to pay the indebtedness of the decedent to the Bank. OPINION Decedent was the president and principal shareholder of the Company, which was the owner and beneficiary of a life insurance policy on his life. Prior to his death, decedent obtained a personal loan from the Bank and, as part of the collateral security for such loan, the Company assigned the policy to the Bank. Following decedent's death, the proceeds of the policy were applied to pay decedent's outstanding indebtedness to the Bank. Such use of the policy proceeds was recorded on the books of the Company and by the decedent's estate as a loan to the estate. The loan was subsequently repaid by a transfer to the Company of shares of Company stock in consideration of the Company's cancellation of the indebtedness of the estate to the Company. Respondent's position is essentially that there was no intention on the part of petitioner and the Company to create an indebtedness at the time the proceeds *125 of the policy were applied to the personal debts of the decedent. Ergo, respondent contends that any subsequent indications of such intent, including the fact of repayment, [1] are immaterial and that such use of the proceeds constituted a dividend to the decedent's estate. The issue herein is purely factual. Our findings of fact reveal that the use of the policy proceeds was treated by both the Company and the petitioner as a loan and that, in accordance with such treatment, the resulting indebtedness was repaid through the redemption of petitioner's stock. [2] These elements, together with our evaluation of the entire record herein, lead us to conclude that a bona fide debtor-creditor relationship existed between petitioner and the Company in respect to the transactions in question and that consequently no dividend income was realized *126 by the petitioner. Decision will be entered for the petitioner. Footnotes
1. Respondent makes no contention that the repayment should be suspect on the ground that it took place after the petitioner became aware that respondent was raising the issue involved herein. See, e.g., (C.A. 2, 1965), affirming . ↩
2. Respondent has not sought to tax petitioner on the basis of the disparity between the price at which the decedent's widow sold some of her shares to Karl (approximately $568 per share) and the price paid by the Company to petitioner (approximately $750 per share). ↩